DAVIS, Judge.
B.M. ("Respondent") appeals from an order terminating her parental rights as to her minor child J.J. ("Justin").[1] After careful review, we affirm.
Factual Background
Respondent is the mother of Justin, who was twelve years old at the time of the 14 November 2014 order terminating Respondent's parental rights. The Robeson County Department of Social Services ("DSS") has been involved in Justin's case since 29 May 2002 when, shortly after his birth, he tested positive for cocaine. Justin has been in DSS custody since 5 September 2008 and was placed in a foster home on that date.
On 23 November 2009, the trial court entered an order awarding guardianship of Justin to his foster parents. Respondent appealed the trial court's 23 November 2009 order, and on 3 August 2010, this Court vacated the trial court's order and remanded on the ground that it had failed to make the required findings necessary for a determination "that a child is not to be returned to [the] parent's home." In re J.M.,206 N.C.App. 330, 698 S.E.2d 557, slip. op. at 7 (2010) (unpublished).
On 18 April 2011, DSS filed a termination of parental rights ("TPR") petition on the grounds that Respondent had (1) failed to cooperate with DSS for the return of Justin; (2) willfully left Justin in foster care for at least 12 months; and (3) not paid child support toward the care of Justin. A hearing on DSS's petition was held before the Honorable John B. Carter, Jr. on 21 March 2012 in Robeson County District Court. On 25 April 2012, Judge Carter entered an order terminating Respondent's parental rights as to Justin on the grounds that (1) she "willfully left [Justin] in custody of [DSS] in foster care for a period of 12 months without making reasonable if any efforts to get [Justin] back"; and (2) "paid no child support towards the care of [Justin] eventhough [sic] able to pay." Respondent appealed the trial court's 25 April 2012 order, and on 19 March 2013, this Court issued an opinion reversing the order. In re J.M.,--- N.C.App. ----, 739 S.E.2d 628 (2013) (unpublished).
In our opinion, we held that the trial court had failed to make any findings that Respondent actually had the ability to pay child support and that the trial court's failure to make such a finding precluded it from concluding as a matter of law that termination of Respondent's rights was appropriate under N.C. Gen.Stat. § 7B-1111(a)(3). Id.,slip. op. at 3-4. We further held that because the trial court failed to make any findings that Respondent had willfullyleft Justin in foster care for 12 months without making reasonable progress toward correcting the conditions which initially led to Justin's removal from her care, its termination of Respondent's parental rights under N.C. Gen.Stat. § 7B-1111(a)(2) was also erroneous. Id.,slip op. at 4.
DSS filed a new petition to terminate Respondent's parental rights on 8 April 2014. In that petition, DSS alleged that Respondent had (1) failed to cooperate with DSS in making reasonable progress toward correcting those conditions that had led to Justin's removal from her custody; (2) willfully left Justin in foster care for longer than 12 months; and (3) failed to pay child support toward the care of Justin. A hearing on this petition was held before Judge Carter on 15 October 2014 in Robeson County District Court.
On 14 November 2014, Judge Carter entered an order terminating Respondent's parental rights on the following grounds: (1) "[Respondent] left [Justin] in the care of [DSS] for more than 12 months without making reasonable progress under the circumstances toward correcting the conditions that led to the removal of the juvenile"; (2) "[Respondent] has not paid a reasonable amount of child support towards the cost of [Justin]"; and (3) "[Respondent] is incapable of providing for the proper care and supervision of [Justin] such that [Justin] is a dependent child and there is a reasonable probability that such incapacity will continue for the foreseeable future." The trial court further concluded that the termination of Respondent's parental rights was in the best interests of Justin and directed DSS to proceed with its permanent plan of adoption. Respondent filed a timely notice of appeal from the trial court's order.
Analysis
Termination of parental rights proceedings are held in two stages, adjudication and disposition, and different standards of review apply to each stage. In re D.R.B.,182 N.C.App. 733, 735, 643 S.E.2d 77, 79 (2007). At the adjudication phase, the court "examines the evidence and determines whether sufficient grounds exist under N.C. Gen.Stat. § 7B-1111 to warrant termination of parental rights." In re T.D.P.,164 N.C.App. 287, 288, 595 S.E.2d 735, 736 (2004), aff'd per curiam,359 N.C. 405, 610 S.E.2d 199 (2005). "[T]he petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen.Stat. § 7B-1111 exists. Findings of fact supported by competent evidence are binding on appeal even if evidence has been presented contradicting those findings." In re L.H.,210 N.C.App. 355, 362, 708 S.E.2d 191, 196 (2011) (internal citation and quotation marks omitted).
If the trial court determines that one or more grounds for terminating a parent's parental rights exist, it then proceeds to the disposition phase and determines whether the termination of such rights is in the best interests of the juvenile. In re D.R.F.,204 N.C.App. 138, 141, 693 S.E.2d 235, 238, disc. review denied,364 N.C. 616, 705 S.E.2d 359 (2010). "We review the trial court's decision to terminate parental rights for abuse of discretion." In re Anderson,151 N.C.App. 94, 98, 564 S.E.2d 599, 602 (2002).
I. Grounds for Termination of Parental Rights
It is well settled that "[a] valid finding on one statutorily enumerated ground is sufficient to support an order terminating parental rights." In re Stewart Children,82 N.C.App. 651, 655, 347 S.E.2d 495, 498 (1986). Consequently, when a trial court finds multiple grounds upon which to base termination of parental rights and the appealing parent makes no argument challenging one or more of the grounds found to exist, thereby conclusively establishing the existence of the ground, it becomes unnecessary for the appellate court to address other grounds adjudicated by the trial court. In re P.L.P.,173 N.C.App. 1, 8, 618 S.E.2d 241, 246 (2005), aff'd per curiam,360 N.C. 360, 625 S.E.2d 779 (2006).
Here, Respondent does not challenge the trial court's termination of her parental rights on the ground that she is incapable of providing for the proper care or supervision of Justin such that he is a dependent juvenile within the meaning of N.C. Gen.Stat. § 7B-101. That ground is therefore conclusively established on appeal. However, in our discretion, we also elect to address the trial court's termination of Respondent's parental rights on the ground that she willfully refused to financially contribute to the support of Justin while he was in the custody of DSS pursuant to N.C. Gen.Stat. § 7B-1111(a)(3).
Respondent argues that the trial court erred in determining that her failure to financially contribute to the support of Justin was willful. Specifically, she contends that "where there [is] no evidence as to her earnings and ability to pay during the six months preceding [DSS's TPR] petition," termination of her parental rights on the ground that she willfully failed to contribute to Justin's care was improper. We disagree.
In a TPR proceeding:
(a) The court may terminate the parental rights upon a finding of one or more of the following:
....
(3) The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
N.C. Gen.Stat. § 7B-1111(a)(3) (2013). We have held that:
In determining what constitutes a "reasonable portion" of the cost of care for a child, the parent's ability to pay is the controlling characteristic.
A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay. What is within a parent's "ability" to pay or what is within the "means" of a parent to pay is a difficult standard which requires great flexibility in its application....
[N]onpayment constitutes a failure to pay a reasonable portion if and only if respondent is able to pay some amount greater than zero.
In re Clark,151 N.C.App. 286, 288-89, 565 S.E.2d 245, 247 (internal citations, quotation marks, and brackets omitted), disc. review denied,356 N.C. 302, 570 S.E.2d 501 (2002).
In the present case, the trial court made the following unchallenged findings of fact in support of its conclusion that Respondent willfully refused to contribute financially to the care of Justin:
177.... [Respondent] obtained employment with Two Hawk Employment Services as of the year of 2009 and Staffing Alliance in 2010. She has worked at the House of Raeford in 2010 and 2011, she has worked at Steven's Bakery in 2012-2013. She has reported that she is still employed with Steven's Bakery. [Respondent] has not contributed to the room and board, living expenses, or educational costs of [Justin] though she has been employed.
....
206.... [Respondent] has currently been working over two and a half years at a business in Pembroke and has willfully failed to provide for any care of [Justin]; that [Respondent] has never provided for support of [Justin] while [Justin] was in the custody of [DSS] since 2002 although [Respondent] had the means at least from 2008 until the current date to provide a reasonable means of support.
207. That [Respondent] has willfully failed to provide support for [Justin], except she stated if a Court order was taken out on her and make her provide support [sic].
These findings were supported by the documentation in Justin's case file-as to which the trial court took judicial notice-as well as the testimony at the hearing from Justin's case worker, Jeneene Daniels. Because Respondent does not challenge any of these findings, they are binding on appeal. See In re A.R.H.B.,186 N .C.App. 211, 214, 651 S.E.2d 247, 251 (2007) ("If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court." (citation and quotation marks omitted)), appeal dismissed,362 N.C. 235, 659 S.E.2d 433 (2008).
We have held that
[a]lthough what is within a parent's 'ability' to pay or what is within the 'means' of a parent to pay is a difficult standard which requires great flexibility in its application, the requirement of § 7B-1111(a)(3) applies irrespective of the parent's wealth or poverty. The parents' economic status is merely a factor used to determine their ability to pay such costs, but their ability to payis the controlling characteristic of what is a reasonable amount for them to pay. Thus, because the trial court in the instant case correctly found that respondent was able to pay some amount greater than zero during the relevant time period, we hold that sufficient grounds existed for termination of respondent's parental rights under N.C. Gen.Stat. § 7B-1111(a)(3).
T.D.P.,164 N.C.App. at 290-91, 595 S.E.2d at 738 (internal citations, quotation marks, and brackets omitted). Moreover, in In re J.E.M., Jr.,221 N.C.App. 361, 727 S.E.2d 398 (2012), we stated that "there is no requirement that the trial court make a finding as to what specific amount of support would have constituted a reasonable portion under the circumstances." Id.at 364, 727 S.E.2d at 401 (citation and quotation marks omitted).
In J.E.M., Jr.,we observed that "the trial court found that father made no child support payments since the child was placed in DSS custody. It further found that father 'has been gainfully employed from time to time.' Finally, it found that father has been physically and financially able to make some payment, but has not done so." Id.at 364-65, 727 S.E.2d at 401. Based on these limited findings-that the respondent-father was intermittently employed during the six-month period preceding the filing of the TPR petition and therefore had some ability to pay but had not done so-we held that "[t]he trial court did not err in finding that [the] father [had] willfully failed to pay child support." Id.at 365, 727 S.E.2d at 401.
In In re Huff,140 N.C.App. 288, 536 S.E.2d 838 (2000), appeal dismissed and disc. review denied,353 N.C. 374, 547 S.E.2d 9-10 (2001), during the six-month period preceding the TPR petition, the respondent-parents were intermittently employed and also at times voluntarily unemployed. We held that
there is no requirement that the trial court make a finding as to what specific amount of support would have constituted a "reasonable portion" under the circumstances. The cases cited by respondents simply require that the trial court make specific findings that a parent was able to pay some amount greater than the amount the parent, in fact, paid during the relevant time period. In the case at bar, the trial court satisfied this requirement.
The parents failed to pay any portion of the cost of care for the child during the relevant six-month period. Although the "reasonable portion" standard is often a difficult standard to apply, we have no difficulty concluding that zero is not a reasonable portion under the circumstances here. We hold that the trial court did not err in concluding that the parents were able to pay some amount above zero.
Id.at 293, 536 S.E.2d at 842 (internal citations omitted).
Respondent cites to In re Faircloth,161 N.C.App. 523, 588 S .E.2d 561 (2003), for the proposition that "[a]bsent such findings or evidence in the record that respondent-mother could pay some amount greater than zero towards the cost of care for [the] children during that period of time, the trial court did not have clear, cogent, and convincing evidence to determine respondent's financial ability." Id.at 526, 588 S.E.2d at 564. However, Fairclothholds-consistent with our other caselaw addressing N.C. Gen.Stat. § 7B-1111(a)(3) -that "[a] parent's ability to pay is the controlling characteristic of what is a 'reasonable portion' of cost of foster care for the child which the parent must pay. A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." Id.at 525, 588 S.E.2d at 563 (citation omitted). Because Respondent was found to be gainfully employed during the six-month period preceding DSS's filing of its TPR petition, the present case is factually distinguishable from Faircloth.
Here, competent evidence supported the trial court's findings of fact that Respondent (1) was employed during the six-month period preceding the filing of DSS's TPR petition; (2) did not pay anyamount towards the care of Justin; (3) stated that she would not pay any amount towards Justin's care absent a court order compelling her to do so; and (4) had the ability to pay some amount greater than zero towards the care of Justin. Based on these facts, we are satisfied that the trial court's conclusion of law that Respondent willfully refused to contribute to the care of Justin during the six-month period preceding the filing of DSS's TPR petition was proper. See T.D.P.,164 N.C.App. at 290-91, 595 S.E.2d at 738 ("Thus, because the trial court in the instant case correctly found that respondent was able to pay some amount greater than zero during the relevant time period, we hold that sufficient grounds existed for termination of respondent's parental rights under N.C. Gen.Stat. § 7B1111(a)(3).").
II. Best Interests of Juvenile
Respondent next asserts that the trial court erred by terminating Respondent's parental rights without considering the dispositional factors and making the dispositional findings enumerated in N.C. Gen.Stat. § 7B-1110(a). N.C. Gen.Stat. § 7B-1110(a) provides, in pertinent part, that
[a]fter an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. The court may consider any evidence ... that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen.Stat. § 7B-1110(a) (2013). While consideration of all of these factors is mandatory, the court is required to make written findings of fact only regarding those factors that are relevant. In re D.H.,---N.C.App. ----, ----, 753 S.E.2d 732, 735 (2014). A factor is relevant for this purpose if there is conflicting evidence concerning the factor such that it is placed in issue. In re H.D.,--- N.C.App. ----, ----, 768 S.E.2d 860, 866 (2015).
Respondent contends that the trial court erred by failing to make findings of fact regarding whether adoption is likely and whether termination will aid in accomplishing the permanent plan. She argues that the trial court's findings that Justin wanted to be adopted and that he had been in placement since 2008 did not compel a finding that the adoption was likely to happen. She submits that these missing findings were relevant to a determination of Justin's best interests.
The record shows that the permanent plan for Justin has been adoption since 16 February 2011. The evidence at the dispositional hearing showed that Justin was twelve years old and has been in an adoptive placement with the same foster parents since 2008. Justin has consistently expressed a desire to be adopted by his foster parents and stated to the trial court that he wanted to be adopted by them. This evidence is reflected in the following findings of fact in the disposition portion of the trial court's order:
2. That it is the recommendation of [DSS] that the plan for [Justin] is to proceed with Termination of Parental Rights of [Respondent] and continue with the plan of adoption.
3. That [Justin] is currently in his adoptive placement where he has been since 2008, he has told [Respondent] that he wants to be adopted and even testified at a previous hearing in Court while [Respondent] was present that he wants to be adopted and wanted his name to be changed to [surname of adoptive parents]. That [Justin] has never indicated that he didn't want to be adopted by the [foster parents].
Respondent does not cite any evidence indicating that adoption was not the permanent plan, that termination of parental rights will not aid in accomplishment of the permanent plan, or that adoption by the foster parents is unlikely, such that these factors were placed in issue. We therefore hold that the trial court did not err by failing to make findings of fact as to whether adoption is likely or whether the termination of parental rights will assist in the accomplishment of the permanent plan for Justin.
Conclusion
For the reasons stated above, the order of the trial court is affirmed.
AFFIRMED.
Chief Judge McGEE and Judge STEPHENS concur.
Report per Rule 30(e).
Opinion
Appeal by respondent from order entered 14 November 2014 by Judge John B. Carter, Jr. in Robeson County District Court. Heard in the Court of Appeals 8 June 2015.

A pseudonym is used throughout this opinion to protect the identity of the minor child and for ease of reading. See N.C.R.App. P. 3.1(b).